IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID A. ROBINSON and REGINA LOUISE ROBINSON | : : : | CIVIL ACTION NO. 09-155 |
| v. | : : | |
| DELTA INTERNATIONAL MACHINERY CORPORATION | : : | |

O'NEILL, J.                                                                                           MARCH 15, 2011

## MEMORANDUM

Plaintiff David Robinson suffered a severe hand injury while operating a table saw manufactured by defendant Delta International Machinery Corporation. His four count complaint alleges claims of: (1) strict liability; (2) negligence; (3) breach of warranty and (4) loss of consortium.[1] Presently before me are defendant's motion to preclude plaintiff's expert witness, Richard A. Colberg, from an offering an expert opinion with respect to certain issues of fact and defendant's motion for summary judgment. Both motions are fully briefed and ripe for disposition. Because I find that even with the benefit of the expert testimony in question plaintiffs are unable to show that defendant's actions were the proximate cause of their respective injuries, I need not decide whether the testimony proffered by plaintiff's expert is admissible.

## BACKGROUND

Plaintiff has been employed in the woodworking industry for more than thirty years. On May 3, 2007, the date he suffered the injury giving rise to this lawsuit, he was the foreman of the

---

[1] Regina Louise Robinson seeks recovery for loss of consortium only. Except as otherwise noted, I use "plaintiff" in this opinion to refer to David A. Robinson.

mill shop at CBM construction. That day, he was building an adjustable fence[2] for the wood shaper in the CBM mill shop. In order to cut a shallow groove in a piece of red oak wood, he installed a dado blade[3] onto a table saw[4] manufactured by defendant. To perform a dado cut, plaintiff first had to remove the safety guard and splitter assembly, which ordinarily protected the user against inadvertent contact with the rotating saw blade. In the process of making the dado cut, the wood jammed against the saw blade and "kicked back" at plaintiff. The kickback drew plaintiff's left hand across the dado blade, nearly severing his index and middle fingers.

STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[2] A fence is a safety device used to keep the wood properly aligned with the cutting blade.

[3] A dado saw blade is actually a series of circular "cutter blades" sandwiched between a pair of ten-inch circular saw blades. A dado blade is used to make a wide cut.

[4] The table saw at issue is a Delta Platinum Edition ten-inch Uni-Saw with a fifty-inch commericial Biesemeyer fence.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

Plaintiff argues that defendant is liable for his injuries because it neither included adequate warnings with the table saw nor conducted an appropriate safety analysis prior to selling the table saw.[5]

---

[5] Pursuant to a stipulation between the parties, plaintiff has withdrawn its claims that: (1) "the subject saw was defective because it lacked an 'overhead' or over-arm guarding system;" and (2) "the subject saw was defective because it lacked a failsafe device, control system, sensor or safety feature (e.g. SawStop) which would have prevented the blade from activating and cutting when [plaintiff's] hand was in the path of the blade." Stipulation between

3

I.   Legal Principles

   A.   Strict Liability and Breach of Warranty

A manufacturer who sells a product in a "defective condition unreasonably dangerous to the consumer or user" is subject to strict liability if the product causes harm to the user. Weiner v. Am. Honda Motor Co., Inc., 718 A.2d 305, 307 (Pa. Super. Ct. 1998), citing Webb v. Zern, 220 A.2d 853 (Pa. 1966). In order to make out a strict liability claim, plaintiff must establish that: "(1) the product was defective; and (2) the defect was the proximate cause of the harm." Id., citing Spino v. John S. Tilley Ladder Co., 696 A.2d 1169, 1172 (Pa. 1997). A product is defective when "the product left the supplier's control lacking any element necessary to make it safe for its intended use." Id., citing Dambacher by Dambacher v. Mallis, 485 A.2d 408, 422 (Pa. Super. Ct. 1984). The three types of actionable product defects are manufacturing defects, design defects and failure to warn defects. Id., citing Phillips v. A-Best Prods., Co., 665 A.2d 1167, 1170 (Pa. 1995).

Pennsylvania law applies the same standards to a breach of warranty claim as it does to a strict products liability claim. Kridler v. Ford Motor Co., 422 F.2d 1182, 1184 (3d Cir. 1970), citing Kassab v. Cent. Soya, 246 A.2d 848, 856 (Pa. 1968).

   B.   Negligence

In order to make out a claim of negligence under Pennsylvania law, a plaintiff must establish: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." Grossman v. Barke, 868 A.2d 561, 566 (Pa. Super. Ct. 2005).

---

the parties (Sep. 10, 2010) (Doc. No. 26).

II. Application

   A. Failure to Warn

Plaintiff argues that defendant is liable for failing to provide "adequate warnings of the increased dangers associated with performing a plunge cut with a stacked set of dado blades." Pl.'s Br. at 8. Specifically, plaintiff argues that he should have been warned of the fact that "there is an increased chance of kickback when dadoing operations are performed, and the chance of kickback increases significantly when the operator performs a plunge or drop cut onto a stacked set of dado blades." Id. Plaintiff's expert goes further, opining that because of the kickback risk defendant should have warned users that "dado [blades] should never be used for any through cutting[6] operation." Richard A. Colberg, Engineer's Report of the David Robinson Incident at 4 (Jan. 25, 2010).

Plaintiff cannot succeed on his failure to warn claim because, for two reasons, he will be unable to establish that defendant's actions proximately caused his injury. See Conti v. Ford Motor Co., 743 F.2d 195, 197-98 (3d Cir. 1984) ("Although the question of causation is normally for the jury, if the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law.") (internal quotation marks omitted). First, because the evidence clearly establishes that he was aware of the risks associated with using a dado blade. "A product is defective due to a failure-to-warn where the product was distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." Estate of Hicks v. Dana Cos.,

---

[6] As the label indicates, a "through cutting operation" or "through-dado" occurs when a dado blade is used to cut all the way through a piece of stock.

LLC, 984 A.2d 943, 962 (Pa. Super. Ct. 2009), quoting Donoughe v. Lincoln Elec. Co., 936 A.2d 52, 61-62 (Pa. Super. Ct. 2007). In the context of a failure to warn claim, the plaintiff cannot establish proximate causation where the plaintiff "knew, or should have known, of that risk about which the missing warning would have cautioned." Mitchell v. Modern Handling Equip. Co., Inc., No. 2637, 1999 WL 1825272, at *6 (Pa. Ct. Com. Pls. June 11, 1999); see also Sherk v. Daisy-Heddon, 450 A.2d 615, 600 (Pa. 1982) ("Where, as here, the lethal propensity of a gun was known or should have been known to the user, liability cannot be imposed upon the manufacturer merely because the manufacturer allegedly has failed to warn of that propensity."); Shannon v. Hobart, No. 09-5220, 2011 WL 442119, at *6 (E.D. Pa. Feb. 8, 2011) ("Furthermore, it is apparent from this testimony from [the plaintiff] that she cannot establish that the mixer was defective for failure to warn that the mixer was dangerous while running because she was aware of the danger.").

Plaintiff's father taught him to make a dado cut when he was twelve years old. Robinson Dep. 29:14-20. In the process, plaintiff's father warned him about the danger of kickbacks and instructed him on how to avoid them. Id. at 32:19-33:21. Plaintiff later passed the same knowledge along to his nephews, id. at 49:1-9, and to the mill shop employees at CBM construction. Id. at 66:20-67:9 (explaining that plaintiff was in charge of teaching and enforcing safety procedures in the CBM mill shop).

Over the course of his woodworking career, plaintiff has made "every cut possible," including dado cuts. Id. at 41:11-15. During his tenure at CBM, he made dado cuts on a weekly basis. Id. at 45:10-12. As a result of his experience, he knew that there was no way to accomplish a "plunge dado"–the type of cut he was attempting on the day of the

6

accident–without removing the safety guard. Id. at 107:12-20. He also knew that he could not use safety devices such as a push stick or a feather board to make a plunge dado cut. Id. at 95:23-96:17. He knew that by moving the board in the same direction as the saw blade, as he did that day, he was more susceptible to kickback.[7] Id. at 106:6-22. Plaintiff testified that at the time of the accident there was no additional information that he needed in order to operate the table saw safely. Id. at 72:16-20. Indeed, he admitted that even with the benefit of hindsight he could not identify any additional evidence that would have been useful. Id. at 72:21-73:1 ("Q. Since the time of the accident, have you felt there was any additional information that you needed in order to safely use the saw? A. No."); see Conti, 743 F.2d at 198-99 (finding that the District Court erred in submitting the plaintiff's failure to warn claim to the jury where the plaintiff argued that the defendant should have provided a warning on the dashboard to depress the clutch before starting the car but admitted that he knew that in "driving a standard transmission you would have to depress the clutch."). In light of this evidence, no reasonable juror could find that plaintiff was unaware of the risks associated with using a dado blade.[8] See Pavlik v. Lane Ltd./Tobacco Exporters Intern., 135 F.3d 876, 884 (3d Cir. 1998) ("[T]o satisfy Rule 56 the record must show that a reasonable fact finder would be bound to find that [plaintiff] was fully aware of the risk of bodily injury . . . .").

Even assuming for the sake of argument that plaintiff was unaware of the risk associated

---

[7] Plaintiff testified that he had actually experienced minor kickbacks during his woodworking career. Robinson Dep. 144:1-10.

[8] This conclusion renders moot plaintiff's argument that the warnings on the side of saw and in the manual should have been placed on the throat plate. See Pl.'s Br. at 12.

7

with using a dado blade,[9] plaintiff cannot succeed on his failure to warn claim because the evidence establishes that if plaintiff had heeded the warnings that were actually included on the saw and in the manual he would not have been injured. The manufacturer expressly warned users against attempting a free hand cut of any kind. See Def.'s Ex. G.[10] Despite the warning, there is no dispute that plaintiff was injured while attempting the through-dado cut free hand. See Robinson Dep. 93:16-105:9; Colberg Dep. 69:12-14 ("Q. What about what [plaintiff] was doing was not safe? A. He was doing a freehand operation, which everybody's manual says don't do."). There is also no dispute that the accident would not have happened if plaintiff had not attempted to make the through-dado cut freehand.[11] Colberg Dep. 78:7-79:2 ("Q. This accident wouldn't have happened if [plaintiff] hadn't been doing it freehand; correct? A. That's

---

[9] To be clear, I find that the evidence establishes that plaintiff was aware of the relevant risks.

[10] The following warnings were inscribed on the front of the table saw:
    FOR YOUR OWN SAFETY
1.    READ AND UNDERSTAND INSTRUCTION MANUAL BEFORE OPERATING TABLE SAW.
    . . .
7.    Do not perform any operation free hand.
8.    Know how to avoid risk of kickback.

[11] The expert went on to suggest a method in which plaintiff could have accomplished the through-dado without resorting to freehand maneuvering. Id. at 78:13-14 ("As I outlined in here, there's a way to do this cut perfectly safely."); see also Richard A. Colberg, Engineer's Report of the David Robinson Incident at 4 (Jan. 25, 2010) ("If a through slot is absolutely needed and alternate means of cutting through as described above are not available, the slot can be safely made by lowering the dado blade beneath the table top and positioning the board over the dado cutter as needed. The board should then be clamped to the table top. Then turn on the motor and slowly elevate the cutter into the board from the underside until it cuts through the top surface. Then lower the blade and reposition the work piece to repeat the underside cuts until the desired size of slot is achieved. In this manner, the operator's hands are never in the area of the cutting operation.").

8

true."). If plaintiff had heeded the warnings set forth on the saw and in the manual, he would not have been injured.

Davis v. Berwind Corp., 690 A.2d 186 (Pa. 1997), is analogous to the present case. In Davis, the plaintiff was employed by Keystone Equity Meats as a quality control inspector. Id. at 188. One of her duties was to operate a blender manufactured by defendant. Id. The blender was manufactured with a variety of safety devices, including "a dual valve system that required the simultaneous use of both of the operator's hands, thus keeping the hands away from the rotating blades" and "an interlocking door" which "automatically block[ed] access to the area where meat was being ground if either of the operator's hands was removed from its place on the control panel." Id. The blender also bore "a visible warning, reading 'DANGER, KEEP FINGERS OUT OF DOOR OPENINGS.'" Id. While installing the blender, Keystone removed both the dual valve system and the interlocking door to enable employees to operate two blenders at once. Id. The plaintiff was injured while operating the blender. Id. She had shut off the power to one of the blenders she was operating and, after waiting ten seconds, opened the door and placed her hand into the area in which meat was ground, unaware that the blades were still turning. Id. The still-turning blades severed three of her fingers. Id.

The plaintiff contended that the warning on the blender was "inadequate to warn the user that the blades would continue to rotate after the power was terminated." Id. at 190. The Court disagreed, noting:

> [the plaintiff's] initial error lies in the characterization of the 'danger' as being the continued rotation of the blades of the meat blender after the power had been turned off. Instead, the danger to be cautioned against is the placement of the operator's hands at any position near the blades. An instruction concerning the continued rotation of the

9

> blades becomes necessary only if the operator blatantly ignores the specific warning to keep fingers away from the door openings. [The plaintiff] is in effect suggesting that we require a manufacturer to warn against dangers that may arise if the stated warnings are not heeded.

Id. The Court went on to conclude that it would be "unreasonable and unwarranted" to require manufacturers to warn against risks that would arise only if other warnings are ignored. Id.

This case is analogous. Plaintiff argues that defendant should have warned about the risk associated with a through-dado cut. However, plaintiff was subjected to such risk only because he first disregarded the warning against making cuts freehand. Like the warning included on the blender in Davis, the warning not to "perform any operation freehand" was sufficient to "address[] the danger and was sufficient to caution the operator." Id. at 191. No more is required.[12]

Defendant is entitled to judgment on plaintiff's failure to warn claims because plaintiff has not shown that defendant's actions were the proximate cause of his injury.

B. Failure To Conduct a Safety Analysis

Plaintiff also argues that defendant is liable for failing to conduct an appropriate "safety analysis for the table saw before placing [it] into the stream of commerce." Pl.'s Br. at 10. Even assuming that defendant did not conduct a safety analysis, such an omission does not by itself establish that the product was defective. It is clearly possible for a product to enter the market without having been subjected to a safety analysis and yet not be defective. Defendant is therefore entitled to judgment on plaintiff's strict liability and breach of warranty claims for its

---

[12] Plaintiff's failure to establish proximate cause is equally fatal to the extent that he argues that defendant negligently failed to warn him of the risks associated with making a through-dado cut.

10

failure to conduct a safety analysis.

To the extent plaintiff argues that defendant's failure to conduct a safety analysis constitutes negligence, I find defendant is entitled to judgment on that claim as well. Assuming for the sake of argument that plaintiff can establish that defendant was under a duty to conduct a safety analysis and that defendant breached that duty, the evidence does not establish that the failure to conduct a safety analysis was the proximate cause of plaintiff's injury. Plaintiff asserts that "defendant's brazen admission that it did not conduct a safety analysis for the table saw before placing the product into the stream of commerce demonstrates defendant's cavalier and reckless attitude toward consumer safety." Pl.'s Br. at 10. He does not, however, explain how defendant's allegedly "cavalier and reckless attitude" proximately caused his injury. The only possible theory is that defendant's failure to conduct a safety analysis resulted in an inadequate warning. As discussed more fully supra, I have found that plaintiff has not established that defendant's alleged failure to warn him of the risks associated with using a dado blade proximately caused his injury. Accordingly, defendant's failure to conduct a safety analysis could not have been the proximate cause of plaintiff's injury.

Defendant is entitled to judgment on plaintiff's claims arising from defendant's alleged failure to conduct a safety analysis.

C. Breach of Warranty

Because I will enter judgment in favor of defendant on each of plaintiff's strict liability claims, defendant is also entitled to judgment on plaintiff's breach of warranty claim. See Kridler, 422 F.2d at 1184 (acknowledging that under Pennsylvania law the elements of a breach of warranty claim are identical to the elements of a strict liability claim).

C.   Loss of Consortium

"Any action for loss of consortium is derivative[;] the viability of such a claim depends upon the substantive merit of the injured party's claims." Fanelle v. Lojack Corp., No. 99-4292, 2000 WL 1801270, at *13 (E.D. Pa. Dec. 7, 2000), citing Schroeder v. Ear, Nose & Throat Assoc., 557 A.2d 21, 22 (Pa. Super. Ct. 1989). Because defendant is entitled to judgment on plaintiff David A. Robinson's claims sounding in negligence and strict liability, it is also entitled to judgment on plaintiff Regina Louise Robinson's derivative loss of consortium claim.

An appropriate Order follows.